# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| DSV AIR & SEA, INC., <br><br> Plaintiff, <br><br> v. <br><br> HUBBELL, INC., <br><br> Defendant. | Civil Action No. _____ <br><br> **COMPLAINT** <br><br> *Jury Trial Demanded* |

Plaintiff DSV Air & Sea, Inc. ("Plaintiff" or "DSV"), by and through its undersigned counsel, hereby submits its complaint (the "Complaint") against Defendant Hubbell, Inc. ("Defendant" or "Hubbell," and with Plaintiff, the "Parties") and in support thereof, alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action seeking a declaratory judgment that Hubbell's termination of the Parties' Non-Vessel Operating Common Carrier Service Arrangement (the "Service Agreement") on December 6, 2022, did not also terminate the Parties' two Price and Freight Capacity Agreements (the "Capacity Agreements"). The Service Agreement and Capacity Agreements, while related, are separate, enforceable ocean transportation contracts, and there is no language in either indicating that one is contingent upon the other. Hubbell is now in breach of the Capacity Agreements for failing to fulfill its weekly volume commitments for DSV and owes DSV significant monetary damages, as described below.

## THE PARTIES

2. At all relevant times, DSV was and is a Delaware corporation with its principal place of business at 200 Wood Avenue South, Suite 300, Iselin, New Jersey 08830.

3. DSV is a licensed Non-Vessel-Operating Common Carrier ("NVOCC") pursuant to 46 U.S.C. §§ 40102(17) and 40901(a).

4. An NVOCC is an ocean carrier that provides transportation services similar to a steamship line or vessel-operating common carrier, but that does not own the vessels or shipping containers. *See* 46 U.S.C. § 40102(17). Rather, an NVOCC compensates the steamship lines for the use of their vessels and containers and then makes those assets available to its customers with cargo to ship. As between the NVOCC and the vessel-operating ocean common carrier, the NVOCC is the shipper or consumer of transportation services. *Id.* As between the NVOCC and its customer/shipper, it acts as the ocean common carrier.

5. At all relevant times, Hubbell was the customer/shipper of DSV and is a Connecticut corporation, with its principal place of business at 40 Waterview Drive, Shelton, Connecticut, 06484.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure.

7. Venue is proper and Hubbell is subject to personal jurisdiction in this Court because the Capacity Agreements entered into by and between the Parties make Delaware courts the exclusive forum for disputes arising thereunder.

## FACTUAL BACKGROUND

**A. The Service and Capacity Agreements**

8. On July 1, 2019, Hubbell and Panalpina, Inc., to which DSV is the successor in interest, entered into the Service Agreement. A true and correct copy of the Service Agreement is attached hereto as **Exhibit A**.

9. The Service Agreement is an NVOCC Service Arrangement ("NSA") as contemplated under 46 C.F.R. Part 531 and in accordance with those requirements set forth in 46 C.F.R. § 531.6.

10. The Service Agreement, among other things, governs the services provided by DSV in arranging for the transportation of Hubbell's goods and executing logistics functions in connection therewith (the "Services") as an NVOCC.  *See* **Ex. A.**

11. On or about April 4, 2022, the Parties executed two separate Capacity Agreements to, among other things, confirm weekly cargo space capacity allocations as set forth therein.

12. Specifically, in one Capacity Agreement, Hubbell agreed to a weekly commitment of eight (8) TEUS (twenty-foot equivalent unit) as detailed therein and based on the quotes provided by DSV, to be loaded in Shanghai and delivered to Houston, Texas (the "Shanghai Capacity Agreement").  A true and correct copy of the Shanghai Capacity Agreement is attached hereto as **Exhibit B**.

13. In the other Capacity Agreement, Hubbell agreed to a weekly commitment of forty-four (44) TEUS as detailed therein and based on the quotes provided by DSV, to be loaded in Yantian and 32 TEUS would be delivered to Savannah, Georgia, with the remaining 12 TEUS being delivered to Charleston, South Carolina (the "Yantian Capacity Agreement").  A true and correct copy of the Yantian Capacity Agreement is attached hereto as **Exhibit C**.

14. The Capacity Agreements are NVOCC-Negotiated Rate Arrangements ("NRA") as contemplated in 46 C.F.R. Part 532 and in accordance with those requirements set forth in 46 C.F.R. § 532.5.

15. The Capacity Agreements only applied to sailings by the underlying steamship line, Hapag Lloyd, with which DSV arranged for the transportation of Hubbell's goods.

16. Under the Capacity Agreements, Hubbell agreed to pay at least $208,000 weekly to DSV because the base rate compensation was $4,000 per TEU from January 5, 2022 through April 30, 2023 (and which decreased to $3,750 per week in 2024 and $2750 per week in 2025). *See* **Ex. B-C** at p. 2.

17. The Service Agreement and Capacity Agreements are separate and distinct enforceable ocean transportation agreements (as an NSA and NRAs, respectively), and there is no language in either indicating that one is contingent upon or directly related to the other.

    **B.**    **Hubbell Terminates the Service Agreement and Improperly Terminates the Capacity Agreements.**

18. Dissatisfied with the agreed-upon rates, approximately one month after signing the Capacity Agreements, Hubbell contacted DSV and sought to renegotiate the Capacity and Service Agreements.

19. DSV agreed to negotiate with Hubbell.

20. But despite DSV's willingness to negotiate, the Parties were unable to reach any further agreement.

21. Thus, the Service and Capacity Agreements remained in place.

22. On December 6, 2022, however, Hubbell provided notice to DSV that it was terminating the Service Agreement and the Capacity Agreements pursuant to Section 10 of the Service Agreement (the "Termination Notice"). A true and correct copy of the Termination Notice is attached hereto as **Exhibit D**.

23. Hubbell maintained, among other things, that in accordance with the Service Agreement, the Capacity Agreements would also terminate within ninety (90) days of the Termination Notice. *Id.*

24. In response, DSV reminded Hubbell that the Capacity Agreements are separate and distinct enforceable agreements that are not contingent on the Service Agreement and that the Capacity Agreements do not have a reciprocal termination provision.

25. Hubbell disagreed with DSV's interpretation of the Service Agreement and the Capacity Agreements. Specifically, Hubbell, has represented to DSV that it believes that the Capacity Agreements expressly incorporate the Service Agreement – which they do not.

26. However, in its post-termination discussions with DSV, Hubbell was unable to identify any specific language within the Capacity Agreements in support of Hubbell's conclusion that the Capacity Agreements incorporate the Service Agreement.

27. Hubbell has failed to tender any loads to DSV under the Capacity Agreements since on or about March 6, 2023.

28. In addition, Hubbell has failed to pay DSV in accordance with the minimum volume commitments in the Capacity Agreements since on or about March 6, 2023.

**C.     DSV is Damaged Due to Hubbell's Failure to Perform under the Capacity Agreements**

29. Unlike the Service Agreement, which contains a 90-day termination provision, the Capacity Agreements do not contain any termination provision and are, instead, effective for the full three-year term, the bulk of which is unexpired.

30. Under the Capacity Agreements, Hubbell committed to weekly volume commitments. Failure to meet those agreed upon volume commitments triggers Hubbell's contractual obligation, per Section 1.6 of the Capacity Agreements to pay DSV the "Customer Volume Performance Compensation Amount."

31. As Hubbell has failed to tender any loads since on or about March 6, 2023, and has indicated that it does not intend to tender further loads, this damages provision is triggered.

32. Hubbell's refusal to perform under the Capacity Agreements has cost DSV significant monetary damages, which constitute the amount that DSV would have received had Hubbell not breached the Capacity Agreements.

## **COUNT I – DECLARATORY JUDGMENT**

33. DSV incorporates by reference the statements and allegations previously set forth in its Complaint as if fully rewritten herein.

34. Under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, federal courts "in a case of actual controversy within its jurisdiction . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

35. For the reasons set forth above, there exists a controversy involving the rights and legal relations of DSV because DSV contends that the Capacity Agreements are separate and distinct enforceable ocean transportation agreements.

36. By Hubbell's refusal to pay DSV the amounts owed under the Capacity Agreements because it believes those agreements were terminated with the termination of the unrelated Service Agreement, Hubbell has made clear it does not agree with DSV's interpretation of and contentions regarding the Capacity Agreements and Service Agreement.

37. Indeed, the controversy between Hubbell and DSV is real and adverse because, among other things, the Parties disagree about the obligations of Hubbell under the Capacity Agreements.

38. DSV requests a judicial determination that the Capacity Agreements are separate enforceable ocean transportation agreements that were not terminated upon the termination of the Service Agreement.

39. Such a declaration is necessary and appropriate at this time so that DSV may pursue its claims for breach of the Capacity Agreements against Hubbell.

40. Based on the foregoing, this issue is ripe for judicial declaration.

41. Therefore, the Court should issue a declaratory judgment regarding whether the Capacity Agreements are separate enforceable ocean transportation agreements.

## COUNT II—BREACH OF CONTRACT

42. DSV incorporates by reference the statements and allegations previously set forth in its Complaint as if fully rewritten herein.

43. Hubbell and DSV are parties to the Capacity Agreements.

44. The Capacity Agreements are valid, separate, enforceable ocean transportation agreements between DSV and Hubbell.

45. The Capacity Agreements are not contingent on the operation of the Service Agreement.

46. The Capacity Agreements are effective for a three-year term as of April 4, 2022, the bulk of which is unexpired.

47. DSV fully performed its obligations under the Capacity Agreements by, among other things, providing the Agreed Space and Equipment on Capacity's ships (as defined therein), until Hubbell wrongfully stopped booking shipments.

48. Hubbell breached the Capacity Agreements by failing to meet the weekly volume commitments required by the Capacity Agreements since March 6, 2023.

49. Moreover, Hubbell has committed an anticipatory breach in notifying DSV in December 2022 that it intended to terminate the Capacity Agreement via termination of the Service Agreement and would not continue to honor the weekly volume commitments.

50. Because of Hubbell's failure to meet its weekly volume commitments, Hubbell is obligated to pay DSV the "Customer Volume Compensation Amount" per Section 1.6 of the Capacity Agreements.

51. Hubbell has not paid DSV the amounts it is rightfully owed.

52. Consequently, as a result of the aforementioned breach, DSV has suffered and will continue to suffer damages and out-of-pocket expenses, in an amount not less than $2,500,000.00, plus interest and costs, to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing factual allegations and applicable legal theories, whether stated herein above or determined at a later time based upon the evidence presented at trial, Plaintiff DSV Air & Sea, Inc., respectfully requests that the Court enter judgment in its favor of Plaintiff and against Defendant, as follows:

### ON THE FIRST CLAIM FOR RELIEF

A declaration that the Capacity Agreements are separate enforceable ocean transportation agreements.

### ON THE SECOND CLAIM FOR RELIEF

For damages in an amount not less than $2,500,000.00, plus interest and costs, to be proven at trial.

### ON ALL CLAIMS FOR RELIEF

For such other, further, and/or different relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests that all matters set forth in this Complaint so triable by tried by and before a jury.

Dated: June 29, 2023
      Wilmington, Delaware

**BENESCH, FRIEDLANDER,**
 **COPLAN & ARONOFF LLP**

*/s/ John C. Gentile*
John C. Gentile (DE Bar #6159)
1313 N. Market Street, Suite 1201
Wilmington, Delaware 19801
Telephone: (302) 442-7010
Email: jgentile@beneschlaw.com

*-and-*

Eric L. Zalud (*pro hac vice* application forthcoming)
Deana S. Stein (*pro hac vice* application forthcoming)
200 Public Square, Suite 2300
Cleveland, OH 44114-2378
Telephone: (216)-363-4500
Email: ezalud@beneschlaw.com
       dstein@beneschlaw.com

*Attorneys for Plaintiff DSV Air & Sea, Inc.*